[No. A049464. First Dist., Div. Three. Mar. 5, 1991.]

VERNA MAGNUSON-HOYT, Plaintiff and Appellant, v.
COUNTY OF CONTRA COSTA, Defendant and Respondent.

**COUNSEL**

Curran & Alschuler and Donald W. Curran for Plaintiff and Appellant.

Gordon, DeFraga, Watrous & Pezzaglia and Timothy J. Ryan for Defendant and Respondent.

**OPINION**

**CHIN, J.**—Verna Magnuson-Hoyt appeals following summary judgment of her inverse condemnation suit against the County of Contra Costa.[1] Appellant claimed that landslide damage to her property in 1986 was caused by the manner in which an adjoining public street was constructed in 1968. The complaint alleged the county "substantially participated in the design and construction" of the street, which originally was accepted by the county for public use. Thirteen days after the acceptance, title to the street was transferred to the newly incorporated City of Lafayette. The county had no responsibility for maintenance of the street after June 1977. In August 1987, more than 10 years later, appellant filed her suit.

This appeal presents the novel question of whether the 10-year statute of limitations for improvements to real property can apply to a claim for inverse condemnation damages. We conclude that the limitations period contained in Code of Civil Procedure section 337.15[2] bars appellant's suit against the county; therefore, we affirm the judgment.

## I. THE FACTS[3]

Woodview Drive, the street in question, is part of a subdivision developed in the late 1960's. The street was designed and built by a civil engineering

---

[1] In the same action, appellant also sued the City of Lafayette, along with her insurance carrier and a neighboring property owner. Appellant settled her claims against the city and dismissed the other named defendants, leaving the county as the sole defendant.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] Our statement of the facts is taken from the county's separate statement of undisputed facts in support of the motion for summary judgment, and from a strict construction of the

firm and contractors hired by the subdivision's developer. The county reviewed and approved the construction plans for compliance with the applicable provisions of the Contra Costa County Subdivision Ordinance Code.[4] On July 16, 1968, the county accepted Woodview Drive as a county road.

Thirteen days later, on July 29, 1968, the subdivision and Woodview Drive became part of the newly incorporated City of Lafayette. The city has retained exclusive title to the street since that date. From 1968 to June 30, 1977, the county provided maintenance services for the city's streets, including Woodview Drive. Since June 30, 1977, the county has had no involvement with the street's maintenance.

Appellant bought a lot in the subdivision on Woodview Drive in 1976, and built a residence on the property during 1978-1980. A landslide damaged the property in February 1986. Appellant filed her original complaint in this action on August 18, 1987. In her first amended complaint, appellant alleged that the county "substantially participated in the design and construction" of the street and that the county "provided criteria for the construction of said improvements . . . ." Appellant claimed that the excavations and fills underlying the road and subdivision contributed to landslides in February 1986 which "undermined the edge of the defendant [neighbor's] real property and Woodview Drive thereby causing a threat to [appellant's] real property and damaging the same." On appeal, as in the trial court, appellant asserts the county is liable because the street and the underlying fill, designed and constructed under the county's criteria and control, failed to perform as intended.

## II. Discussion

Section 337.15 provides, in pertinent part: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the

county's supporting evidence. The record on appeal, prepared under California Rules of Court, rule 5.1, contains no response by appellant to the county's separate statement and no evidentiary showing by appellant to contradict the county's evidence. Accordingly, and because appellant concedes the essential facts are not disputed, we consider the facts to be undisputed.

[4] At all times pertinent to the development of the subdivision and construction of the street, the county subdivision ordinance stated that the county's public works department "shall specify the structural design for the streets." (Contra Costa County Subdivision Ords. No. 1430, § IX, subd. B-2-a), repealed June 8, 1967, and No. 67-19, § 8449, subd. (a), eff. June 8, 1967.)

following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency. [¶] (b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection . . . . [¶] (e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the [*sic*] control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action . . . ."

■ Appellant argues that section 337.15 does not apply to her claims against the county because the statute does not specifically include public agencies in subdivision (a). Appellant also alludes to the legislative history of section 337.15 as indicating a legislative intent to limit the statute's application to contractors and other professionals and tradespeople in the construction industry, citing principally the discussion in *Moseley* v. *Abrams* (1985) 170 Cal.App.3d 355, 362-363 [216 Cal.Rptr. 40]. We cannot agree with appellant's constricted reading of the statute.

In *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798-801 [268 Cal.Rptr. 753, 789 P.2d 934], our Supreme Court recently reiterated the primary rules governing statutory interpretation. ■ The principal task is to determine the lawmakers' intent, and for that we must turn first to the words themselves. There is no need for construction if the language is clear and unambiguous, nor is it necessary to resort to extrinsic aids such as legislative history. (*Id.*, at pp. 798, 800.) Indeed, where the statutory language is clear and unambiguous, the courts should not search for external indicia of intent. (*Id.*, at pp. 800-801; see also *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

■ Section 337.15 clearly and unambiguously expresses a legislative intent to put a 10-year limit on latent deficiency liability exposure for "any person"[5] performing certain activities in making improvements to real property. Among the activities covered by the statute are performing or furnishing the design or specifications of the improvement. There is nothing in the

---

[5] As used in the Code of Civil Procedure, the word "person" includes both natural persons and corporations. (§ 17.) A county is a legal subdivision of the state, but it also is "a body corporate and politic . . . ." (Gov. Code, §§ 23002, 23003.) Thus, counties have been classified as "quasi-corporations" with sufficient corporate character to be considered corporations under the Code of Civil Procedure. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491, fn. 12 [96 Cal.Rptr. 553, 487 P.2d 1193].)

words of the statute that suggests a public or governmental entity which has engaged in one of the specified activities is precluded from asserting the statute as a defense. Consequently, resort to the legislative history of section 337.15 is unnecessary. We therefore hold that the provisions of section 337.15 can apply to claims against governmental and public entities.

We turn to application of the statute to appellant's claims in this action. Appellant claimed the land fill underlying the street, as designed and constructed under the county's criteria and control, failed to perform as intended and thereby damaged her property. Plainly, appellant's action is for damage to real property arising out of a latent deficiency in the design, specification, or construction of an improvement to real property. The activities appellant contends give rise to the county's liability are the very activities covered by the statute. Woodview Drive unquestionably is an improvement to real property[6] and, just as clearly, "substantial completion" of the street occurred more than 10 years before appellant filed suit in 1987.

The statute contains an exception that we expect will make this defense unavailable in nearly all inverse condemnation actions. By its terms, the statute cannot be asserted by any person owning, possessing, or controlling the improvement at the time a deficiency proximately causes injury. (§ 337.15, subd. (e).) Thus, in the only prior opinion addressing the statute's applicability to inverse condemnation, the defendant city could not assert the defense because it was an owner in possession of the offending improvements. (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 405 [163 Cal.Rptr. 711].) Here, though, the county has not owned the street since July 1968, and has not even arguably controlled the street since June 1977, when the county's maintenance responsibilities ended.

■ The defense afforded by the statute does not conflict with the fundamental policy underlying inverse condemnation actions. That policy is to distribute throughout the relevant community the loss inflicted on the individual by a public improvement. (*Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 296 [142 Cal.Rptr. 429, 572 P.2d 43]; *Ullery* v. *County of Contra Costa* (1988) 202 Cal.App.3d 562, 568 [248 Cal.Rptr. 727].) Where one governmental entity has ceded possession and control of a public improvement to another, then the latter is the logical community to share a loss caused by that improvement. Further, the governmental entity owning or controlling the public improvement will best be able to discover and correct defects.

---

[6] See, e.g., Government Code section 66419, subdivision (a), which states: " 'Improvement' refers to any street work and utilities to be installed, or agreed to be installed, by the subdivider on the land to be used for public or private streets . . . ."

██ Appellant's claims against the county place her action squarely within the terms of the 10-year limitations period of section 337.15. The statute's exception for defendants in possession or control of an improvement at the time of injury does not apply. Therefore, summary judgment was proper on the basis that appellant's claims were barred by section 337.15.

In light of our conclusion, we need not consider the county's other contention that an inverse condemnation action will not lie against a public entity neither owning nor controlling an improvement when a loss occurs.

The judgment is affirmed.

Merrill, Acting P. J., and Strankman, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 6, 1991.