[No. D043012. Fourth Dist., Div. One. Nov. 2, 2004.]

STEPHEN GAGGERO et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO, Defendant and Respondent.

**COUNSEL**

Higgs, Fletcher & Mack, Robert E. Gallagher, Jr., and John Morris for Plaintiffs and Appellants.

Cozen and O'Connor, Peter A. Lynch, Sam S. Sheldon; John J. Sansone, County Counsel, and William A. Johnson, Jr., Deputy County Counsel, for Defendant and Respondent.

OPINION

**BENKE, Acting P. J.—** ■ We find a landfill is an "improvement" within the meaning of the 10-year statute of repose provided by Code of Civil Procedure[1] section 337.15. Accordingly, we affirm the trial court's summary judgment entered in favor of defendant and respondent County of San Diego (the county), which owned and operated a landfill from 1959 through 1969, when it sold the landfill to a private party.

■ Section 337.15 required any action based on alleged defects in the design, construction or operation of the landfill be brought within 10 years after the county ceased ownership and operation of the landfill. Because plaintiffs and appellants Stephen Gaggero and Sue Gaggero, individually and as trustees of the Gagerro Family Trust (collectively Gaggeros), and The Good Earth Nursery, Inc., did not file their complaint, which alleges the county is responsible for subsidence on the site of the landfill, until 2000, their complaint is time-barred.

## FACTUAL SUMMARY

The county opened the Fallbrook landfill in 1959 and closed it in 1967. In 1969 Hollis Warner and Bernice Warner bought the landfill from the county in an "as is" transaction.

The Gaggeros bought the landfill from the Warners in 1974 and operated a nursery on it. In 1985 Stephen Gaggero noticed subsidence on the property and attributed it to settling of the landfill. Since 1988 the county has monitored the site for purposes of detecting methane gas migration and water intrusion into the site.

In 1998 and 1999 severe subsidence at the former landfill caused major damage to nursery structures on the property. According to plaintiffs, the subsidence was the result of a defective design and operation of the landfill. In particular, they allege decomposition of material placed in the landfill produced methane gas, which in turn has created void pockets in areas beneath the landfill covering.

## PROCEDURAL HISTORY

On June 11, 1999, the Gaggeros filed a claim for damages with the county. The claim was rejected and on February 1, 2000, the Gaggeros filed a

---

[1] All further statutory references are to the Code of Civil Procedure unless specified otherwise.

complaint against the county. The complaint alleged causes of action for inverse condemnation, nuisance, negligence, trespass and for recovery of toxic waste response costs. In particular, the complaint alleged the county was negligent in the manner in which the landfill was planned, designed, owned, occupied and maintained.

The county moved for summary judgment on the grounds the Gaggeros' complaint was untimely. The trial court granted the motion and entered judgment in favor of the county. The Gaggeros filed a timely notice of appeal.

## DISCUSSION

### I

■ Summary judgment may be granted only when a moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*), the Supreme Court clarified the law courts must apply in California in ruling on motions for summary judgment.

■ Where the motion is brought by a defendant, the defendant will bear the burden of persuasion "one or more elements of" the "cause of action" in question "cannot be established," or that "there is a complete defense" thereto. (*Aguilar, supra*, 25 Cal.4th at p. 850, citing § 437c, subd. (*o*)(2).) In *Aguilar* the Supreme Court established summary judgment law in California does not require a defendant conclusively negate an element of the plaintiff's cause of action. Rather, in accordance with federal law: "All that the defendant need do is to 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff. [Citation.] In other words, all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X. Although he remains free to do so, the defendant need not himself conclusively negate any such element—for example, himself prove *not X*." (*Aguilar, supra*, 25 Cal.4th at pp. 853–854, fns. omitted.)

■ In broadly outlining the law of summary judgment, the Supreme Court stated: "If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment. In such a case . . . the 'court should grant' the motion 'and avoid a . . . trial' rendered 'useless' by nonsuit or directed verdict or similar device." (*Aguilar, supra*, 25 Cal.4th at p. 855.)

## II

Section 337.15 states in pertinent part: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: .

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency. [¶] . . . [¶]

"(g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs:

"(1) The date of final inspection by the applicable public agency.

"(2) The date of recordation of a valid notice of completion.

"(3) The date of use or occupation of the improvement.

"(4) One year after termination or cessation of work on the improvement.

"The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement."

As it is used in section 337.15, the term "improvement" has been given a very broad interpretation: "The word improvement, in respect to real property, has been described in various manners depending on the context in which it was used. Government Code section 66419, subdivision (a), defines the word improvement in respect to subdivision maps and sets forth ' "Improvement" refers to such street work and utilities to be installed, or agreed to be installed, by the subdivider . . . and drainage needs . . . .' Civil Code section 3106 refers to 'work of improvement' upon real property and sets forth 'the filling, leveling, or grading of any lot or tract of land' as a 'work of improvement.' Websters' New Twentieth Century Dictionary (unabridged 2d ed.), defines improvement as 'a change or addition to land, property, etc., to

make it more valuable, such as a house, fence, garage. etc.' ■ As used in section 337.15 'an improvement' is in the singular and refers separately to each of the individual changes or additions to real property that qualifies as an 'improvement' irrespective of whether the change or addition is grading and filling, putting in curbs and streets, laying storm drains or of other nature." (*Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 770–771 [167 Cal.Rptr. 440] (*Liptak*), fns. omitted.)

This broad interpretation of improvement is consistent with the history and purposes of section 337.15. "Prior to the enactment of section 337.15, damage resulting from slippage caused by improper cutting, filling, and compaction was subject to either the three-year limitation of section 338, former subdivision 2, or the four-year limitation of section 337, depending upon whether the action was predicated on negligence or breach of warranty. However, the three- or four-year period, as the case may be, did not commence to run until the consequential damage caused by the subsidence or lateral movement was sufficiently appreciable to a reasonable man that he had a duty to expeditiously pursue his remedies. [Citations.] The time when consequential damages reaches such a point is a question of fact. [Citations.] Section 337.15 imposes an absolute requirement that a suit arising from such damage be brought against the developer, or other persons named in the statute, within 10 years of the date of 'substantial completion of such development or improvement.' " (*Liptak, supra,* 109 Cal.App.3d at p. 769.)

■ Thus, "[t]he purpose of section 337.15 has been stated as 'to protect developers of real estate against liability extending indefinitely into the future.' [Citation.] [] [We have] noted that '[a] contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise.' [Citation.]" (*Martinez v. Traubner* (1982) 32 Cal.3d 755, 760 [187 Cal.Rptr. 251, 653 P.2d 1046].)

■ In *Liptak* the defendants "were each involved in the grading, filling, and maintaining of the slopes of [a subdivision] tract. Such work was completed during 1967; however, substantial completion of the homes and housing tract did not take place until June 1972." (*Liptak, supra,* 109 Cal.App.3d at p. 767.) On March 4, 1978, 11 years after the defendants' grading and filling had been completed, the plaintiffs' homes were damaged by earth movement. The court found claims against the grading and filling defendants were untimely under section 337.15, even though the developer completed the subdivision within 10 years of the plaintiffs' damage. The court stated: "The 10-year period commences to run in respect to a person who has contributed towards 'an improvement' when such improvement has

been substantially completed irrespective of whether or not the improvement is part of a development." (109 Cal.App.4th. at p. 772.) In 1981 the Legislature codified the holding in *Liptak* by adopting section 337.15 subdivision (g).

In *Nelson v. Gorian & Associates, Inc.* (1998) 61 Cal.App.4th 93 [71 Cal.Rptr.2d 345] (*Nelson*) the court followed *Liptak* and applied section 337.15, subdivision (g), in a case where the plaintiffs purchased a buildable lot, constructed a home on it and within 10 years of purchase brought suit against the seller. However, because actual work on the lot had been completed more than 10 years before the plaintiffs brought suit, the complaint was time-barred. The court stated: "Here the work of improvement was a graded, buildable lot. After the engineering and grading work was substantially completed in 1985, [the lot] was ready for construction. Appellants filed their complaint more than 10 years later, alleging that respondents 'failed to properly plan, supervise, inspect, fill, grade, compact and prepare plaintiffs' lot . . . .' Substantial evidence supports the trial court's ruling that the action against [the seller] was barred by section 337.15." (61 Cal.App.4th at pp. 99–100.)

The court in *Magnuson-Hoyt v. County of Contra-Costa* (1991) 228 Cal.App.3d 139, 144–145 [278 Cal.Rptr. 770] (*Magnuson-Hoyt*) reached a similar result. There the defendant county had constructed a road and transferred title of it to a city. Eighteen years after completion of the road, a landslide near it damaged the plaintiff's property. In finding the plaintiff's inverse condemnation cause of action was subject to section 337.15, the court stated: "Section 337.15 clearly and unambiguously expresses a legislative intent to put a 10-year limit on latent deficiency liability exposure for 'any person' performing certain activities in making improvements to real property. Among the activities covered by the statute are performing or furnishing the design or specifications of the improvement. There is nothing in the words of the statute that suggests a public or governmental entity which has engaged in one of the specified activities is precluded from asserting the statute as a defense." (228 Cal.App.3d at pp. 143–144.)

### III

Contrary to the Gaggeros' contention, the county's construction and operation of the landfill was an improvement within the meaning of section 337.15. Although the holdings in *Liptak, Nelson* and *Magnuson-Hoyt* do not address application of section 337.15 to a landfill, the broad interpretation those cases have given to the term "improvement" and the somewhat similar nature of the work considered in those cases convinces us the county's construction and operation of the landfill was well within the scope of the

statute. While the county's primary goal may not have been to obtain a profit from eventual sale of the landfill, in filling it, covering it and selling it, the county was engaged in making the real property suitable for further use by others. Section 337.15 and the cases which have interpreted it make it clear, in enacting the statute, the Legislature's unambigous intention was to put a temporal limit on liability for individuals and entities engaged in these sorts of purposeful alterations to and transfers of real property.

The Gaggeros argue even if the county's activities in constructing and operating the landfill are governed by section 337.15, the landfill is continuing to produce methane gas, which in turn creates the soil subsidence, and is therefore a continuing nuisance. The Gaggeros reason that the landfill, as a continuing nuisance, continually gives rise to causes of action. (See e.g., *Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 675–676 [15 Cal.Rptr.2d 796].)

■ However, the continuing nature of a nuisance does not extend the 10-year limit imposed by section 337.15. (*Chevron U.S.A, Inc. v. Superior Court* (1994) 44 Cal.App.4th 1009, 1017 [54 Cal.Rptr.2d 324]; *Sevilla v. Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611 [161 Cal.Rptr. 700].) "The continuing nuisance or trespass theory allows for deferral of the starting date of the statute of limitations in much the same way as does the discovery rule. Neither theory or rule may override the statute of repose created by the Legislature's fixed starting point and outer limit for latent construction defects. . . . [¶] . . . [¶] '[T]he event which triggers the 10-year period is the date of substantial completion of the improvement.' [Citations.]" (*Chevron, U.S.A., Inc. v. Superior Court, supra,* 44 Cal.App.4th at p. 1017.)

## IV

Section 337.15, subdivision (e), provides an exception for claims made against "any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause" of a cause of action. The Gaggeros argue that because the county installed methane monitoring equipment on the landfill in 1988, the county was in actual possession or control of the landfill within the meaning of this exception to section 337.15. We disagree.

■ In explaining the rationale for the exception, the court in *Barnhouse v. City of Pinole* (1982) 133 Cal.App.3d 171, 182–183 [183 Cal.Rptr. 881], stated: " 'First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable . . . . Second, a builder may be liable for construction defects under various legal theories—

contract, warranty, negligence, and perhaps strict liability in tort. Landowner liability for such defects, on the other hand, typically lies only in tort, unless the landowner is a lessor, in which case he is liable only for events occurring while the tenant is in possession . . . . Third, landowners can ordinarily avoid liability by taking adequate care of their land and structures . . . . The builder has no such control over his product after relinquishing it to the land-owner . . . .' [Citations.]" (Accord *Chevron U.S.A., Inc. v. Superior Court, supra,* 44 Cal.App.4th at p. 1019.)

The county's monitoring activity did not bring it within the rationale of the exception. The monitoring did not narrow the scope of potential claimants nor the theories upon which the county might be held liable. Rather, quite to the contrary, the monitoring arguably expanded the scope of the county's potential liability. Moreover, the county's monitoring activity, initiated almost 20 years after it sold the landfill, did not provide the county with any means of preventing or curing the methane gas releases and consequent subsidence which the Gaggeros contend were the proximate cause of their losses. In sum there is nothing in the record which would give rise to application of the exception provided by section 337.15, subdivision (e).

## CONCLUSION

Any claim growing out of failure on the part of the county in its construction or operation of the landfill was governed by section 337.15. Because operation of the landfill ceased in 1967 and the county sold it in 1969, any cause of action was time barred well before the Gaggeros filed their complaint in 2000.

Judgment affirmed. Respondent to recover its costs of suit.

Nares, J., and McIntyre, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 19, 2005.