[No. C029233.Third Dist. Nov. 29, 1999.]

MELVIN E. OLIVER et al., Plaintiffs and Appellants, v.
AT&T WIRELESS SERVICES et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.C. and D.

COUNSEL

Peters, Rush, Habib & McKenna and James P. McKenna for Plaintiffs and Appellants.

Watson, Khachadourian, Kevin R. Iams; Weintraub, Genshlea & Sproul, Charles L. Post and Kelly E. Sutter for Defendants and Respondents.

OPINION

**KOLKEY, J.**—After an existing 110-foot cellular telephone transmission tower on their neighbors' property was replaced by one that was approximately 20 feet taller, plaintiffs Melvin E. Oliver and Brigitte M. Oliver

brought this action against their neighbors, John J. and Joyce A. Permann (the Permanns), various cellular telephone companies, and the County of Butte (the County), claiming inverse condemnation, nuisance, intentional and negligent misrepresentation, suppression of fact, and 4 other causes of action.

The trial court granted summary judgment in favor of the Permanns and the following cellular telephone companies: AT&T Wireless Services, Cellular One, and McCaw Cellular Communications.

The published portion of this opinion addresses the issues of whether the construction of a cellular transmission tower on a neighbor's property, in accordance with approvals from the County and the California Public Utilities Commission (PUC), gives rise to causes of action for inverse condemnation and nuisance by the adjoining property owners by reason of the transmission tower's "looming" appearance, which has purportedly decreased the value of their property.

Significantly, any remedy that is given to the plaintiff property owners for the perceived infringement of their property rights will result in an infringement of their neighbors' rights to lease their land for the use of the transmission tower. In this particular case, while we have sympathy for plaintiffs' plight, not all plights give rise to legal rights. We conclude that the mere displeasing appearance in size and shape of a neighboring structure that is otherwise permitted by law, the only admitted effect of which is an alleged diminution in value of the adjacent property, cannot constitute a nuisance or give rise to an inverse condemnation claim.[1] Since a landowner has no natural right to an unobstructed view (*Posey* v. *Leavitt* (1991) 229 Cal.App.3d 1236, 1250 [280 Cal.Rptr. 568]), the size and shape of an otherwise lawful structure on one side of a boundary cannot be deemed either to damage (for purposes of inverse condemnation) or to interfere with the enjoyment (for purposes of nuisance) of that which is on the other side of the boundary. Otherwise, one person's tastes could form the basis for depriving another person of the right to use his or her property, and nuisance law would be transformed into a license to the courts to set neighborhood aesthetic standards. We affirm summary judgment in defendants' favor.

---

[1]Throughout this appeal, the parties have assumed that the defendant cellular telephone companies could exercise the right of eminent domain, and thus expose themselves to an action for inverse condemnation. Since this issue has not been presented to us, we imply no view on it.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *The Tower's Construction*

For more than 26 years, plaintiffs, Mr. & Mrs. Oliver, have lived on a 20-acre parcel on Power House Hill Road in Oroville, California. Immediately adjacent to plaintiffs' property is a two-and-one-half-acre parcel located on Bronson Court, Oroville, owned by defendants, the Permanns.

In or about 1990, the Permanns leased a portion of their property near plaintiffs' parcel for the construction of a cellular telephone transmission tower.[2] In 1990, a 110-foot transmission tower, with a cargo container at its base (the service module), surrounded by a chain link security fence, was constructed on the leased portion of the Permanns' property (the cell site). Although plaintiffs later testified that they "might not have liked" the transmission tower, they never complained to the Permanns or anyone else about it.

In 1994, defendant Cellular One sought a use permit from the County Planning Commission to upgrade several facilities, including the cell site.

Before the cell site upgrade began, John Permann told Melvin Oliver that the existing service module would be moved and that a new service module would be constructed in its place. No other defendant communicated with plaintiffs about the upgrade of the cell site prior to the construction of the new tower.

The County Planning Department approved the proposed upgrade, subject to several conditions, including that it "[m]eet the Fire Department's requirements for 30 foot clearance." The PUC also approved the cell site improvements.

Thereafter, the 110-foot tower and its service module were replaced by a new, larger tower (from time to time referred to as the new tower)[3] and a 10-foot-by-20-foot concrete outbuilding. The center of the new tower is located 41 feet from plaintiffs' property line. At its closest point, standing at an angle to the property line, the outbuilding stands 13 feet from plaintiffs' property line. The chain link security fence that surrounds the cell site, also standing at an angle to the property line, is only seven feet from plaintiffs' property at its closest point.

---

[2]The cellular telephone company with which John Permann originally contracted is not a party to this action.

[3]The record reflects a fleeting dispute over the exact height of the new tower. The trial court found the tower to be "some 130 feet tall," and plaintiffs in their reply brief and at oral argument concede this.

## B. *Plaintiffs' Criticisms of the New Tower*

Plaintiffs' primary complaint about the new tower is "visual." They find it a "big eyesore" and "oppressive." They contend that it "looms" over their property.

Plaintiffs also observe that the tower produces a "strumming" noise when the wind blows and that the outbuilding produces an intermittent "hum" sound. However, the cell site emits no offensive odors or other effluent, and caused no actual physical damage to plaintiffs' property.

## C. *Plaintiffs' Complaint*

Plaintiffs brought the instant action, which names as defendants, among others, the Permanns, the County, AT&T Wireless Services, Cellular One, and McCaw Cellular Communications (the latter three of which shall be referred to collectively as the cellular defendants).[4] The first amended complaint seeks damages and an order rescinding the use permit allowing construction of the new tower. It alleges the following nine causes of action: inverse condemnation, nuisance, negligence, and negligent infliction of emotional distress (against all defendants); trespass and negligent trespass (against all defendants except the County); fraud/intentional misrepresentation and fraud/negligent misrepresentation (against AT&T Wireless Services and Cellular One); and suppression of fact (against Cellular One only).

## D. *The Trial Court's Grant of Summary Judgment*

Following discovery, defendants moved for summary judgment, or alternatively, for summary adjudication, on the grounds that plaintiffs could not establish any of their causes of action.

The trial court granted the motion, finding that defendants were entitled to judgment as a matter of law on all causes of action. Among other things, the court found that (1) no cause of action for inverse condemnation could be maintained against the Permanns because they lacked the power of eminent domain, and as to the cellular defendants, "the tower does not create a burden on the plaintiffs' property that is cognizable in eminent domain"; (2) Civil Code section 3482 bars plaintiffs' nuisance claim; and (3) plaintiffs could not demonstrate that they relied upon the alleged representations by

---

[4]Other defendants (who are not parties to this appeal) include General Cellular Corporation, Western Wireless Corporation, and Sierra Communications. Because only the cellular defendants and the Permanns are parties to this appeal, we shall use the term "defendants" to refer to them.

Cellular One to the County for purposes of their causes of action for misrepresentation and suppression of fact.

Plaintiffs' appeal contends that the trial court erred in determining that no triable issues of fact existed with respect to the first five causes of action for inverse condemnation, nuisance, intentional and negligent misrepresentation, and suppression of fact. In the published portion of this opinion, we address the causes of action for inverse condemnation and nuisance.

## II. DISCUSSION

A motion for summary judgment is properly granted if the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant is entitled to summary judgment if a necessary element of the plaintiff's cause of action cannot be established or if there exists a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (o)(2).)

■ "Because the trial court's determination is one of law based upon the papers submitted, the appellate court must make its own independent determination regarding the construction and effect of the supporting and opposing papers. We apply the same three-step analysis required of the trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez* v. *Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

"The trial court's stated reasons supporting its ruling, however, do not bind this court," as we review "the ruling, not its rationale." (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].) Consequently, "[i]f summary judgment was properly granted on any ground, we must affirm regardless of whether the [trial] court's reasoning was correct." (*Jackson* v. *Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836 [20 Cal.Rptr.2d 913].)

### A. *The First Cause of Action: Inverse Condemnation*

As set forth in their first amended complaint, plaintiffs' theory of inverse condemnation is based on the allegations that (1) the design, maintenance,

and operation of the new tower caused their property to "decrease[] in value"; and (2) because the outer boundary of the cell site is only seven feet from the property line, defendants will be required to intrude onto plaintiffs' property to satisfy the fire department's requirement of a thirty-foot clearance around the site.

Plaintiffs do not renew on appeal the latter contention that a requirement for the 30-foot fire clearance will necessitate an intrusion on their property, and thus, we need not address it.[5]

■ We therefore turn to plaintiffs' primary contention—that the new tower's height, maintenance, and operation have caused a diminution in their property's value—thereby giving rise to a claim for inverse condemnation. ■ "[A]n action in inverse condemnation has its basis in the California Constitution, article I, section 19, which requires payment of just compensation when private property is taken *or damaged* for public use." (Original italics; *Harding* v. *State of California* ex rel. *Dept. of Transportation* (1984) 159 Cal.App.3d 359, 364 [205 Cal.Rptr. 561]; see *San Diego Gas & Electric Co.* v. *Superior Court* (1996) 13 Cal.4th 893, 939-940 [55 Cal.Rptr.2d 724, 920 P.2d 669].)

However, while the court is sympathetic to the claimed loss of value of plaintiffs' property, any such decline in value cannot, in and of itself, establish inverse condemnation: "[A] diminution in property value is not a 'taking or damaging' of the property, but an element of the measure of just compensation when such taking or damaging is otherwise proved." (*San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 942; see also *Los Angeles County Metropolitan Transportation Authority* v. *Continental Development Corp.* (1997) 16 Cal.4th 694, 713 [66 Cal.Rptr.2d 630, 941 P.2d 809] [recovery of neighboring landowners in an inverse condemnation or nuisance action requires more than a showing that the value of the property has diminished as a result of the project]; *Koll-Irvine Center Property Owners Assn.* v. *County of Orange* (1994) 24 Cal.App.4th 1036, 1042-1043 [29 Cal.Rptr.2d 664].)

Accordingly, " 'in an inverse condemnation action, the property owner must first clear the hurdle of establishing that the public entity has, in fact,

---

[5]In the trial court, plaintiffs alleged that the fire regulations required a 30-foot brush clearance around the tower in accordance with Public Resources Code section 4291, which would result in an intrusion onto their property. The trial court rejected this claim on the ground that section 4291 only requires clearance up to the property line. Specifically, Public Resources Code section 4291, subdivision (a), requires the maintenance of a firebreak "of not less than 30 feet on each side thereof *or to the property line, whichever is nearer*" (italics added), absent a finding that extrahazardous conditions exist. Because there is no allegation of "extrahazardous conditions," nothing required defendants to maintain a firebreak beyond the Permanns' property line.

taken [or damaged] his or her property before he or she can reach the issue of "just compensation." ' " (*San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 940.) In this case, plaintiffs cannot establish that a public entity has taken or damaged *their* property by virtue of the construction of a cellular transmission tower on their *neighbors'* property.

First, it is undisputed that the Permanns are private individuals. They are not alleged by the complaint to possess the power of eminent domain. Accordingly, the trial court found that no cause of action for inverse condemnation could be maintained against them. We agree. (See *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 732 [84 Cal.Rptr. 11] [where the damage is done by a private person without powers of condemnation such as those enjoyed by public utilities or educational institutions, ". . . there is, of course, no action in inverse condemnation"]; 7 Miller & Starr, Cal. Real Estate (2d ed. 1990) Inverse Condemnation, § 23:1, p. 592 [a property owner has no action for inverse condemnation "against a *private* entity that does not have the power of eminent domain" (italics in original)].)

With respect to the cellular defendants,[6] plaintiffs argue, noting how the tower "dominates the landscape around [their] residence," that their property has been substantially burdened and therefore damaged as a result of the location of the cellular transmission tower on the Permanns' property, citing *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 296 [142 Cal.Rptr. 429, 572 P.2d 43] (*Varjabedian*).

 Property is "taken or damaged" within the meaning of article I, section 19 of the California Constitution, so as to give rise to a claim for inverse condemnation, when: (1) the property has been physically invaded in a tangible manner; (2) no physical *invasion* has occurred, but the property has been physically *damaged*; or (3) an intangible intrusion onto the property has occurred which has caused no damage to the property but places a *burden* on the property that is direct, substantial, and peculiar to the property itself. (*San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 940; *Varjabedian, supra,* 20 Cal.3d at p. 296.)

 The first two circumstances that justify a claim are not applicable here: Plaintiffs do not contend on appeal that their property has been physically invaded or physically damaged.

This leaves the issue of an intangible intrusion.

 To recover for inverse condemnation under this theory, plaintiffs must be able to establish that their alleged loss resulted from an intangible

---

[6]See footnote 1, *ante.*

intrusion onto their property which has "resulted in a burden on the property that is direct, substantial, and peculiar to the property itself." (See *San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 940; *Harding* v. *State of California* ex rel. *Dept. of Transportation, supra,* 159 Cal.App.3d at pp. 364-365.)

The California Supreme Court has stated that a burden on neighboring property is sufficiently direct and substantial if the neighboring landowner can establish that the consequences of the intangible intrusion are "not far removed" from a direct physical intrusion. (See *Los Angeles County Metropolitan Transportation Authority* v. *Continental Development Corp., supra,* 16 Cal.4th at p. 713; *Varjabedian, supra,* 20 Cal.3d at p. 297.)

In *Varjabedian,* for instance, an injury resulting to neighboring landowners from the gaseous effluent from a sewage treatment facility, which allegedly rendered their land " 'untenantable for residential purposes,' " was deemed "not far removed from those core cases of direct physical invasion which indisputably require compensation." (20 Cal.3d at p. 297.) There, evidence was adduced that the odors "destroy[ed] the comfort and enjoyment of [plaintiff's] home and property" (*id.* at p. 293) and caused such physical symptoms as the burning of eyes and nausea. In reversing judgment on the pleadings dismissing the plaintiffs' inverse condemnation cause of action, our Supreme Court ruled that the plaintiffs should be granted the opportunity of demonstrating that the burden on their property from the noxious sewage fumes was "direct, substantial, and peculiar," such that it gave rise to an inverse condemnation claim. (*Id.* at p. 299.)

Likewise, noise, dust, and debris from a nearby freeway, and the loss of light resulting from a 23-foot embankment (resulting in the loss of a vegetable garden), which made neighboring property "virtually untenable," have been held to be sufficiently analogous to a direct physical intrusion to maintain a claim of inverse condemnation in the face of a motion for summary judgment. (*Harding* v. *State of California* ex rel. *Dept. of Transportation, supra,* 159 Cal.App.3d at pp. 365-367.)

Here, however, defendants have demonstrated from plaintiffs' own depositions that the burden imposed on plaintiffs' property by the new tower and its attendant equipment does not resemble the type of perceptible intrusion, such as strong odors, overpowering noise, dust, vibration, or the loss of light, which directly and substantially burden the property so as to give rise to an inverse condemnation claim.

Plaintiffs testified that the new tower has not prevented or disrupted the use and enjoyment of their property. According to Melvin Oliver, with the

exception of the view from a single small window, the new tower cannot be seen from anywhere inside his house. Melvin Oliver testified that the "strumming" sound coming from the tower when the wind blows is "not loud," and it has never interrupted plaintiffs' sleep or disturbed their entertaining, gardening, or other outdoor activities. He has heard generator-initiated sounds from the tower only once a year, and the sounds cannot be heard from inside the house. Likewise, although Brigitte Oliver testified that she hears the tower's generator hum every half an hour, she does not consider the sound unpleasant, and it does not keep her from the yard. Plaintiffs suffer no odors, dust, or vibrations. Melvin Oliver also testified that he suffered no physical manifestations of emotional distress after the new tower went up, but found it "depressing . . . when we didn't have any say in it." Brigitte Oliver testified that she experienced loss of sleep, but has not suffered any other symptoms of distress.

Accordingly, plaintiffs' principal complaint about the tower is visual. The mere *appearance* of a lawful structure on neighboring property cannot give rise to an action in inverse condemnation, which, after all, requires that property be "taken or damaged for public use" (Cal. Const., art. I, § 19) —unless we are to do violence to the words "taken or damaged" in the constitutional provision upon which such claims are founded. There is no authority for the proposition (and the parties cite none) that plaintiffs are entitled to compensation merely because a large, unattractive structure went up next door.

The lack of substantial burden on plaintiffs' property is further reflected by the fact that plaintiffs never complained about the old, 110-foot transmission tower, but only complained of the "looming" appearance imposed by the new, marginally taller tower constructed around 1994. A 20 percent increase in the height of a 110-foot tower (assuming the new tower is 130 feet)[7] hardly transforms a tolerable burden into a substantial one, even if we credit plaintiffs' point at oral argument that the new tower has a different look to it.

Accordingly, the unattractive appearance of an otherwise lawful cellular transmission tower on neighboring property cannot give rise to a claim for inverse condemnation in light of plaintiffs' deposition testimony that the new tower has not disturbed their enjoyment of property for such outdoor activities as entertaining or gardening and can only be seen from one small window. Summary judgment on this claim was proper.

B. *The Second Cause of Action: Nuisance*

■ .In their second cause of action, as set forth in the first amended complaint, plaintiffs allege that the cell site constitutes a nuisance because

---

[7]See footnote 3, *ante.*

the new tower "dominates the landscape around their home," the cell site emits loud noises in windy conditions and other noises from its generator, and the mandatory fire clearance will result in encroachment onto their property.

In their appellate briefs, plaintiffs argue that the trial court erred in ruling that Civil Code section 3482 bars their nuisance claim. That section provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." Plaintiffs argue that the authorization of the County Planning Commission and the PUC were tainted by defendants' misrepresentations concerning the location and setting of the site.

 We need not reach this issue, which raises several complex issues, because the record is clear, based on plaintiffs' declarations and deposition testimony, that a nuisance cannot be made out here.[8]

██ Civil Code section 3479 provides in the relevant portion, "Anything which is . . . indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property" is a nuisance. " 'So long as the interference is substantial and unreasonable, and such as would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance.' [Citation.] An interference need not directly damage the land or prevent its use to constitute a nuisance; private plaintiffs have successfully maintained nuisance actions against airports for interferences caused by noise, smoke and vibrations from flights over their homes [citations] and against a sewage treatment plant for interference caused by

---

[8]We review plaintiffs' nuisance claim as one for private nuisance since the complaint is phrased in terms of an interference solely with plaintiffs' use and enjoyment of their property. "Unlike public nuisance, which is an interference with the rights of the community at large, private nuisance is a civil wrong based on disturbance of rights in land." (*Koll-Irvine Center Property Owners Assn.* v. *County of Orange, supra,* 24 Cal.App.4th at p. 1041; accord, Prosser & Keeton, Torts (5th ed. 1984) § 86, p. 618.) In contrast, Civil Code section 3480 provides that "[a] public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons . . . ." "To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." (Prosser & Keeton, Torts, *supra,* § 90, at p. 645; fns. omitted.) Plaintiffs do not allege interference with an interest common to the general public.

Moreover, "[a] private person may maintain an action for a public nuisance if it is specially injurious to himself, but not otherwise." (Civ. Code, § 3493.) "The damage suffered [in order for a private party to maintain an action for a public nuisance] must be different in kind and not merely in degree from that suffered by other members of the public." (*Koll-Irvine Center Property Owners Assn.* v. *County of Orange, supra,* 24 Cal.App.4th at p. 1040.) Since plaintiffs cannot make out a claim for injury from a private nuisance (see discussion, *infra*), it follows that they cannot show special injury for purposes of maintaining an action for public nuisance.

noxious odors." (*Koll-Irvine Center Property Owners Assn.* v. *County of Orange, supra,* 24 Cal.App.4th at p. 1041; see *Harding* v. *State of California ex rel. Dept. of Transportation, supra,* 159 Cal.App.3d at p. 362 [". . . anything which interferes with the free use and enjoyment of property, including such things as dust and noise, may constitute a nuisance"].)

However, the essence of a private nuisance is its interference with the *use* and *enjoyment* of land. (*Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124 [99 Cal.Rptr. 350]; accord, Prosser & Keeton, Torts, *supra,* § 87, at p. 619 ["The essence of a private nuisance is an interference with the use and enjoyment of land."].) The activity in issue must "disturb or prevent the comfortable enjoyment of property" (*Venuto* v. *Owens-Corning Fiberglas Corp. supra,* 22 Cal.App.3d at p. 126), such as smoke from an asphalt mixing plant, noise and odors from the operation of a refreshment stand, or the noise and vibration of machinery. (*Ibid.*)

 No interference with the use or enjoyment of the land is made out here and thus a nuisance claim cannot be maintained for the following reasons: A diminution in value does not interfere with the present use of property and cannot alone constitute a nuisance. (See *Koll-Irvine Center Property Owners Assn.* v. *County of Orange, supra,* 24 Cal.App.4th at p. 1043.) As noted earlier, it is undisputed that the noise from the cell site (the "strumming" and "hum") does not interfere with plaintiffs' enjoyment of their property. The only allegation in support of plaintiffs' nuisance claim is that the new tower's *appearance* interferes with their enjoyment of the property.[9] They claim that it is tall and "looms over" their property. Yet, they also admit that the new tower cannot be seen from anywhere inside their house, except from a single window. That has not disrupted their use of their property.

The displeasing height and shape of the new tower cannot, in and of itself, make it a nuisance to those who sit on the other side of the property line. The interference that constitutes a private nuisance must be "substantial and unreasonable." (*Koll-Irvine Center Property Owners Assn.* v. *County of Orange, supra,* 24 Cal.App.4th at p. 1041; Prosser & Keeton, Torts, *supra,* § 87, at pp. 622-623.) Several California appellate court decisions have ruled that the unpleasant appearance of neighboring property, in and of itself, does not rise to the level of a nuisance. (*People* v. *Oliver* (1948) 86 Cal.App.2d 885, 887 [195 P.2d 926] ["the unsightly condition of the premises" alone will not render the property a nuisance]; *Haehlen* v. *Wilson* (1936) 11 Cal.App.2d 437, 441 [54 P.2d 62] ["ugly and untidy" wooden fence was not a nuisance].)

---

[9]The maintenance of the fire clearance did not require any interference with plaintiffs' property and thus did not constitute a nuisance. (See fn. 5, *ante.*)

In *Haehlen* v. *Wilson, supra*, 11 Cal.App.2d at page 441, we rejected a claim that a six-and-one-half-foot wooden fence along the plaintiffs' boundary constituted a nuisance on the grounds that it created, among other things, "an ugly and untidy appearance" and a fire hazard. We stated: "In the absence of some legislative action the courts cannot set up esthetic standards to which builders must conform. [¶] 'No case has been cited, nor are we aware of any case, which holds that a man may be deprived of his property because his tastes are not those of his neighbors. Esthetic considerations are a matter of luxury and indulgence rather than a necessity, and it is necessity alone which justifies the exercise of police power to take private property without compensation.' " (*Ibid.*, quoting *Varney & Green* v. *Williams* (1909) 155 Cal. 318, 320 [100 P. 867].)

In short, the displeasing appearance of an otherwise lawful structure on one side of a boundary cannot be deemed to substantially interfere with the enjoyment of that which is on the other side of the boundary without significantly diminishing the rights associated with both sides of the boundary.

■ Other jurisdictions agree that the unsightliness of a neighboring structure, in and of itself, does not constitute a nuisance. (E.g., *Oklejas* v. *Williams* (1983) 165 Ga.App. 585 [302 S.E.2d 110] [an unsightly wall built by neighboring landowners did not constitute a nuisance, even if it tended to devalue the adjoining property]; *Alabama Power Co.* v. *Stringfellow* (1934) 228 Ala. 422 [153 So. 629] [allegation that an electric substation was ugly and unsightly did not make it a nuisance]; *McCaw* v. *Harrison* (Ky. 1953) 259 S.W.2d 457, 458 [a cemetery does not constitute a nuisance "merely because it is a constant reminder of death and has a depressing influence on the minds of persons who observe it, or because it tends to depreciate the value of property in the neighborhood, or is offensive to the aesthetic sense of an adjoining proprietor"].)

Moreover, " '[a]s a general rule, a landowner has no natural right to air, light or an unobstructed view and the law is reluctant to imply such a right.' " (*Posey* v. *Leavitt, supra*, 229 Cal.App.3d at p. 1250, quoting *Pacifica Homeowners' Assn.* v. *Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1152 [224 Cal.Rptr. 380].) Since ". . . the courts have held that a building or structure cannot be complained of as a nuisance *merely* because it obstructs the view from neighboring property" (*Venuto* v. *Owens-Corning Fiberglas Corp., supra*, 22 Cal.App.3d at p. 127), it follows that the size and shape of a neighboring structure that does not obstruct the

view and *is otherwise permitted by law, however displeasing its appearance,* cannot constitute a nuisance.[10]

■ Accordingly, based on plaintiffs' own admissions (see *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [112 Cal.Rptr. 786, 520 P.2d 10] [summary judgment appropriate where "discovery has produced an admission or concession on the part of the party opposing summary judgment which demonstrates that there is no factual issue to be tried . . . ."]), plaintiffs have simply failed to show the existence of a triable issue of fact as to whether the new tower, by its appearance alone, constitutes a nuisance. Indeed, while plaintiffs may understandably be frustrated at the presence of a large transmission tower adjacent to their property, they surely can see the converse mischief (and infringement) on a homeowner's property rights if homeowners could prevent their neighbors from construction deemed unattractive. Here, plaintiffs were aware of the construction, and it behooved them to determine how to participate in the political process if they opposed the construction of the transmission tower. Summary adjudication of this cause of action was proper.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Scotland, P. J., and Blease, J., concurred.

---

[10]Our opinion only extends to structures that are displeasing or unattractive in appearance and not to structures that are obscene or similarly offensive, about which we express no opinion.

*See footnote, *ante,* page 521.