failed to comply with assisting Alexis in initiating calls to or receiving calls from Maria.

Further, § 42-364.15(1) authorizes a trial court to enter orders as are reasonably necessary to enforce rights of either parent, and this includes the modification of previous court orders relating to parenting time, visitation, or other access. As discussed above, I would reverse the breakfast meeting modification, but I would affirm the other two modification provisions as being reasonably necessary to enforce matters pertaining to telephone contact.

————————————

6224 Fontenelle Boulevard, L.L.C., appellant, v.
Metropolitan Utilities District, appellee.

___ N.W.2d ___

Filed May 5, 2015.    No. A-13-704.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. **Constitutional Law: Appeal and Error.** Constitutional interpretation is a question of law on which an appellate court is obligated to reach a conclusion independent of the decision by the trial court.
4. **Summary Judgment.** Summary judgment proceedings do not resolve factual issues, but, instead, determine whether there is a material issue of fact in dispute.
5. ____. If a genuine issue of fact exists, summary judgment may not properly be entered.
6. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.
7. **Summary Judgment: Evidence: Proof.** After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.

8. **Summary Judgment: Words and Phrases.** In the summary judgment context, a fact is material only if it would affect the outcome of the case.

9. **Eminent Domain: Words and Phrases.** Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings.

10. **Eminent Domain: Property: Intent.** Inverse condemnation has been characterized as an action or eminent domain proceeding initiated by the property owner rather than the public entity and has been deemed to be available where private property has actually been taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings.

11. **Constitutional Law: Eminent Domain: Damages.** Because the governmental entity has the power of eminent domain, the property owner in an inverse condemnation cannot compel the return of property taken; however, as a substitute, the property owner has a constitutional right to just compensation for what was taken.

12. **Judgments: Eminent Domain.** The ultimate determination of whether government conduct constitutes a taking or damaging is a question of law for the court.

13. **Eminent Domain.** In an action for inverse condemnation due to a governmental taking or damaging of a landowner's property without the benefit of condemnation proceedings, actual physical construction or physical damaging is not necessary for compensation.

14. **Judgments: Eminent Domain.** A determination of what constitutes a burden on property that is direct, substantial, and peculiar to the property itself requires a case-by-case analysis and cannot be defined by one specific set of circumstances.

15. **Eminent Domain: Property: Proof.** In order to meet the initial threshold in an inverse condemnation case that the property has been taken or damaged for public use, it must be shown that there was an invasion of property rights that was intended or was the foreseeable result of authorized governmental action.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed.

Jason M. Bruno and Robert S. Sherrets, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Ronald E. Bucher and Mark Mendenhall for appellee.

Inbody, Chief Judge, and Irwin and Bishop, Judges.

Inbody, Chief Judge.

## INTRODUCTION

6224 Fontenelle Boulevard, L.L.C. (6224 Fontenelle), appeals the order of the Douglas County District Court granting

summary judgment in favor of Metropolitan Utilities District (MUD), denying 6224 Fontenelle's motion for summary judgment, and dismissing 6224 Fontenelle's inverse condemnation action. For the reasons that follow, albeit for reasons different from those of the district court, we affirm the order dismissing 6224 Fontenelle's motion for summary judgment and granting MUD's motion for summary judgment.

## STATEMENT OF FACTS

On March 7, 2012, MUD installed a gas regulator station in the public right-of-way near 6224 Fontenelle's property located at 6224 Fontenelle Boulevard, Omaha, Douglas County, Nebraska. A gas regulator station is a utility facility that controls the pressure and flow of natural gas to the natural gas distribution system, consisting of aboveground pipes, valves, regulators, and other equipment which allows for the continuous monitoring of gas pressure.

On March 1, 2013, 6224 Fontenelle brought an inverse condemnation proceeding in Douglas County Court to have damages ascertained and determined and to request an appointment of appraisers. The petition alleged that MUD engaged in a taking which caused damage to 6224 Fontenelle's property through the installation of a "dangerous, obnoxious, and unsightly" gas regulator station. The petition further alleged that MUD had taken the property for public use without condemnation proceedings and that the gasline regulator station is not functional and serves no purpose.

In accordance with procedures set forth in the eminent domain statutes, Neb. Rev. Stat. §§ 76-701 through 76-726 (Reissue 2009), the county court appointed three disinterested freeholders to serve as appraisers, which appraisers inspected the property and held a meeting to hear arguments from any interested party. The appraisers submitted a report concluding that no damages were incurred at the property located at 6224 Fontenelle Boulevard.

6224 Fontenelle appealed that determination to the district court. In the petition on appeal, 6224 Fontenelle alleged several causes of action, including inaccurate valuation,

excessive taking, improper purpose, and failure to negotiate in good faith.

MUD filed a motion to strike and for summary judgment which alleged that there was no genuine issue of material fact and that MUD was entitled to judgment as a matter of law. In response, 6224 Fontenelle filed a partial motion for summary judgment as to its allegations of inaccurate valuation and failure to negotiate in good faith. 6224 Fontenelle alleged that it suffered $68,000 in damages and requested that the court enter judgment in its favor.

Hearings were held on the pending motions, and evidence was received by the court. A member of 6224 Fontenelle submitted an affidavit indicating that in his opinion as a licensed real estate broker, in accordance with a 2012 appraisal, the fair market property value was $70,500 prior to the erection of the gas regulator station. He opined that after the erection of the gas regulator station, the fair market value of the home was $2,500. He also included a March 9, 2012, appraisal valuing the property using the sales comparison approach at $40,300. The appraisal further provides:

> In addition to the above adjustments, a further adjustment was made for the presence of the gas line regulator station that is located in the right-of-way right east and in front of the subject property. The view to the street is obstructed and considered unsitely [sic]. Along with this, is the perception of a safety hazard and the warnings of open flames and such in the vicinity of the station. With the stated regulations, the unsitely [sic] view and the perceived safety concerns, even though the regulator station in [sic] not on the subject property, it still has an affect [sic] on the market value of the home. Because of this, an adjustment of 25% of the market value of the property before the station construction (first appraisal) was made for external obsolescence under the feature "view".

> Justification of the adjustment for the gas line regulator station was derived from information concerning other external detractors of value, including overhead

high power transmission lines, natural gas transmission lines, etc. Articles concerning examples of the affect [sic] on market values are attached in this appraisal. However, the appraiser was unable to find local sales data that supports the reduction of market value by the existence of the station. The adjustment made herein is derived from articles, along with years of experience in the real estate sales and appraisal industry.

(Emphasis omitted.)

A senior design engineer for MUD submitted an affidavit indicating that she was involved in the final approval for the design of the gas regulator station involved in this case. She indicated that originally, the gas regulator station was to be constructed farther east, closer to Fontenelle Boulevard, but that the site was moved because of a reported concern related to potential damage to existing mature trees. She indicated that MUD and the city of Omaha had previous disputes regarding tree damage and that MUD now makes efforts to avoid any tree damage if possible. She indicated that the gas regulator station was constructed within the public roadway right-of-way; that the gas regulator was currently functioning and had been in operation since October 16, 2012; and that MUD has 63 aboveground gasline regulator stations in its service territory and has had no incidents or accidents resulting in safety concerns.

Also received into evidence was an affidavit submitted by the current tenant at the property located at 6224 Fontenelle Boulevard which indicated that the tenant had given notice to vacate the premises as a result of the installation of the gas regulator station, because the station was "ugly and unattractive," prevented her children from playing in the front yard because of her fear for their safety, and bore a label stating, "'CAUTION GAS PIPELINE. NO SMOKING, MATCHES OR OPEN FLAMES . . .'" that prevented her family from having barbecues in the front yard.

The affidavit of a licensed Realtor in Omaha further indicated that the gas regulator station near 6224 Fontenelle Boulevard "radically diminishes" the value of the property and

"presents a significant impediment to marketing and selling the property."

The district court found that 6224 Fontenelle had appealed the determination in its inverse condemnation action where the appraisers had determined that no damages were sustained as a result of the construction of the gas regulator station on a public roadway. The district court found that while 6224 Fontenelle's property may have diminished in value as a result of the construction of the regulator station, the construction alone did not constitute a taking or a physical invasion of the property, and thereby that 6224 Fontenelle's petition did not state a cause of action. As such, the district court found that there was no genuine issue of material fact, sustained MUD's motion for summary judgment, and dismissed 6224 Fontenelle's petition with prejudice. The district court over-ruled MUD's motion to strike and denied 6224 Fontenelle's motion for summary judgment.

It is from that order that 6224 Fontenelle has timely appealed to this court.

## ASSIGNMENTS OF ERROR

6224 Fontenelle assigns, rephrased and consolidated, that the district court erred by granting MUD's motion for summary judgment and by denying its motion for summary judgment and dismissing its petition with prejudice.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor*, 287 Neb. 182, 842 N.W.2d 50 (2014). In review-ing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judg-ment was granted, and gives that party the benefit of all rea-sonable inferences deducible from the evidence. *Id*.

[3] Constitutional interpretation is a question of law on which an appellate court is obligated to reach a conclusion

independent of the decision by the trial court. See *Pony Lake Sch. Dist. v. State Committee for Reorg.*, 271 Neb. 173, 710 N.W.2d 609 (2006).

## ANALYSIS

On appeal, 6224 Fontenelle argues that the district court erred by dismissing its motion for summary judgment and granting MUD's motion for summary judgment.

[4,5] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor, supra*. Summary judgment proceedings do not resolve factual issues, but, instead, determine whether there is a material issue of fact in dispute. *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013). If a genuine issue of fact exists, summary judgment may not properly be entered. *Id.*

[6-8] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Id.* After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.* In the summary judgment context, a fact is material only if it would affect the outcome of the case. *Id.*

[9] Neb. Const. art. I, § 21, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings. *Village of Memphis v. Frahm*, 287 Neb. 427, 843 N.W.2d 608 (2014);

*Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013).

[10,11] Inverse condemnation has been characterized as an action or eminent domain proceeding initiated by the property owner rather than the public entity and has been deemed to be available where private property has actually been taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings. See *Henderson v. City of Columbus, supra*. Because the governmental entity has the power of eminent domain, the property owner cannot compel the return of property taken; however, as a substitute, the property owner has a constitutional right to just compensation for what was taken. *Id*.

[12] The ultimate determination of whether government conduct constitutes a taking or damaging is a question of law for the court. See, *Rupert v. City of Rapid City*, 827 N.W.2d 55 (S.D. 2013); *E-L Enters. v. Milwaukee Metro. Sewer*, 326 Wis. 2d 82, 785 N.W.2d 409 (2010) (ultimate determination of whether government conduct constitutes taking is question of law that is not properly placed before jury); *G & A Land, LLC v. City of Brighton*, 233 P.3d 701 (Colo. App. 2010) (whether taking has occurred such that action can be brought under taken or damaged clause of state constitution is issue of law to be decided by court); *State v. Heal*, 917 S.W.2d 6 (Tex. 1996) (determinations of whether property has been damaged under constitution generally; determination of whether there is material and substantial impairment to property as result of taking is question of law); *Yegen v. City of Bismarck*, 291 N.W.2d 422 (N.D. 1980) (determination of whether or not there has been taking or damaging of private property for public use is question of law).

This case presents this court with a unique set of factual circumstances, one of which has not been addressed by Nebraska courts, such that 6224 Fontenelle has alleged an inverse condemnation action where there has been no physical intrusion or taking of its property, but only a damaging of the property by virtue of a loss of value to the property. Thus, we ask, In an

inverse condemnation action, must there be an actual physical taking or invasion of the landowner's property?

In this case, the property had not been physically invaded in a tangible manner, no physical invasion had occurred, and the property had not been physically damaged. The district court concluded that 6224 Fontenelle failed to state a cause of action based on inverse condemnation, based upon the court's determination that "while [6224 Fontenelle's] property may have diminished in value as a result of the construction of the regulator station it does not constitute a taking or a physical invasion of the property."

In the case of *Quest v. East Omaha Drainage Dist.*, 155 Neb. 538, 52 N.W.2d 417 (1952), the plaintiff filed an action for damages allegedly caused to the plaintiff's real estate as a result of an excavation made by the defendant on its land adjoining the plaintiff's land. In *Quest v. East Omaha Drainage Dist., supra*, there was no actual physical taking by the defendant of the plaintiff's property. Instead, evidence was adduced that the excavation resulted in a cliff on the defendant's property which destroyed the use of the plaintiff's property for residential purposes. *Id*. The evidence showed that children could and did get under the fence built along the cliff; fires were started in the area; dirt, dust, and litter blew into the plaintiff's property; wind coming from the face of the cliff blew roofing and shingles from the plaintiff's home; pools of stagnant water gathered in the excavated area, which brought mosquitoes; hundreds of cliff swallows nested in the cliff, which resulted in excessive noise and filth in the plaintiff's yard; and annoying noise and vibrations from nearby trains which were not experienced prior to the excavation now caused cracks in the walls and ceilings. *Id*. The Nebraska Supreme Court found that there had been a taking by a public entity, because the excavation and the resulting cliff "materially depreciated the market value of plaintiff's property and restricted its use." *Id*. at 542-43, 52 N.W.2d at 420.

In the case of *City of Omaha v. Matthews*, 197 Neb. 323, 248 N.W.2d 761 (1977), landowners instituted an inverse condemnation action for damage suffered when the sanitary sewer connection from their buildings to a sewer on the street

was disrupted and destroyed by actions of the public building commission. The Nebraska Supreme Court held that sanitary sewer connections running from private property to the city or district sewer main were privately owned and could not be appropriated or destroyed by the city without compensation to the owner. *Id.* The court found that "the commission had the power of condemnation and it may be exercised whenever property is damaged for public use. An actual taking of property is not required." *Id.* at 327, 248 N.W.2d at 763. See, also, *Kula v. Prososki*, 219 Neb. 626, 365 N.W.2d 441 (1985) (when private property has been damaged for public use, owner is entitled to seek compensation in direct action under state constitutional provision); *Maloley v. City of Lexington*, 3 Neb. App. 976, 536 N.W.2d 916 (1995) (takings clause of Nebraska Constitution prohibits both taking and damaging of property without just compensation and allows recovery for damages caused by temporary takings, as well as by permanent takings).

[13] It is clear then that the answer to our initial question is no, in an action for inverse condemnation due to a governmental taking or damaging of a landowner's property without the benefit of condemnation proceedings, actual physical construction or physical damaging is not necessary for compensation. As such, the district court erred, as a matter of law, in determining that 6224 Fontenelle was not entitled to the benefit of inverse condemnation proceedings based on there being no actual taking or physical invasion of the property of 6224 Fontenelle. Clearly, an actual physical taking or physical invasion of a landowner's property is not necessary for a claimant to successfully bring an inverse condemnation action.

Having determined that an actual physical invasion of property is not required, we now consider whether the property of 6224 Fontenelle was taken or damaged within the meaning of Neb. Const. art. I, § 21, as a result of MUD's installation of a gas regulator station in the public right-of-way near 6224 Fontenelle's property. As mentioned, there is little precedent in Nebraska regarding this issue, and so we look to other states for guidance in our review of the matter.

California courts have held that property is "'taken or damaged'" within the meaning of the California Constitution (whose article I, § 19, is similar to Nebraska's constitutional provision) when (1) the property has been physically invaded in a tangible manner; (2) no physical invasion has occurred, but the property has been physically damaged; or (3) an intangible intrusion onto the property has occurred which has caused no damage to the property but places a burden on the property that is direct, substantial, and peculiar to the property itself. *Oliver v. AT&T Wireless Services*, 76 Cal. App. 4th 521, 530, 90 Cal. Rptr. 2d 491, 497 (1999). Accord *San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 920 P.2d 669, 55 Cal. Rptr. 2d 724 (1996).

The first two circumstances that would justify a claim of inverse condemnation are clearly not present in this case, which leaves the issue of whether there has been an intangible intrusion onto the property which has caused no damage to the property but places a burden on the property that is direct, substantial, and peculiar to the property itself.

[14] A determination of what constitutes a burden on property that is "direct, substantial, and peculiar to the property itself" requires a case-by-case analysis and cannot be defined by one specific set of circumstances. See *Arkansas Game and Fish Comm'n v. U.S.*, ___ U.S. ___, 133 S. Ct. 511, 518, 184 L. Ed. 2d 417 (2012) (there is "no magic formula [that] enables a court to judge, in every case, whether a given government interference with property is a taking").

The California Supreme Court has illustrated what types of intrusions would establish a burden that is "direct, substantial, and peculiar to the property itself" by explaining that the landowner must establish that the consequences of the intangible intrusion are not far removed from a direct physical intrusion. *Oliver v. AT&T Wireless Services*, 76 Cal. App. 4th at 530, 90 Cal. Rptr. 2d at 497. See, e.g., *Varjabedian v. City of Madera*, 20 Cal. 3d 285, 572 P.2d 43, 142 Cal. Rptr. 429 (1977) (recurring violation of property by gaseous effluent from sewage treatment facility and claim that land was made untenable for residential purposes); *Bauer v. County of Ventura*, 45 Cal. 2d 276, 289 P.2d 1 (1955) (invasions of water

or other liquid effluents provide basis for inverse liability); *Harding v. Department of Transp*., 159 Cal. App. 3d 359, 205 Cal. Rptr. 561 (1984) (noise, dust, and debris from nearby freeway and loss of light from 23-foot embankment resulting in loss of vegetable garden made neighboring property virtually untenable).

Other states have likewise addressed the issue, on a case-by-case analysis, using similar determinations of whether or not an intangible intrusion is a taking or damaging for purposes of inverse condemnation actions. The South Dakota Supreme Court requires that a plaintiff prove that the consequential injury is peculiar to the land and not of a kind suffered by the public as a whole. *Krier v. Dell Rapids Tp*., 709 N.W.2d 841 (S.D. 2006). See, also, *Rupert v. City of Rapid City*, 827 N.W.2d 55 (S.D. 2013) (city's use of deicer on streets adjacent to owner's property was direct and substantial action that caused peculiar injury).

The Minnesota Supreme Court has held that the test is that the owner show "a direct and substantial invasion of his property rights of such a magnitude [that] he is deprived of the practical enjoyment of the property and that such invasion results in a definite and measurable diminution of the market value of the property." *Alevizos v. Metropolitan Airports Comm*., 298 Minn. 471, 487, 216 N.W.2d 651, 662 (1974). The court went on to also require that the invasion of property rights be repeated and aggravated with a reasonable probability that it will continue into the future. *Alevizos v. Metropolitan Airports Comm., supra*.

[15] In Nebraska, in order to meet the initial threshold in an inverse condemnation case that the property has been taken or damaged "'for public use,'" it must be shown that there was an invasion of property rights that was intended or was the foreseeable result of authorized governmental action. *Henderson v. City of Columbus*, 285 Neb. 482, 493, 827 N.W.2d 486, 495 (2013).

6224 Fontenelle argues that *Henderson v. City of Columbus, supra*, broadens the notion of a taking beyond property that is actually taken, to include compensation for property that is damaged through a diminishment of the market value of the

property, while MUD and the district court through its determinations interpret that case to narrow the requirement for compensation to the finding of a physical taking only.

In *Henderson v. City of Columbus, supra*, the plaintiffs sued the defendant after raw sewage flooded into their home after a heavy rainstorm. The plaintiffs claimed that the flooding damaged their home and was the result of a malfunction of the city-run sanitary sewage system. The complaint alleged theories of recovery based upon negligence, inverse condemnation under the Nebraska Constitution, nuisance, and trespass. After a bench trial on liability, the trial court found in favor of the defendant and dismissed the plaintiffs' complaint. The plaintiffs appealed to this court, which affirmed the trial court's order with respect to negligence but reversed the portion of the trial court's order which found in favor of the defendant with regard to inverse condemnation. Although for reasons different from those of the trial court, the Nebraska Supreme Court held that the plaintiffs failed to establish an inverse condemnation claim and affirmed the trial court's judgment in favor of the defendant. *Id*.

In the opinion, the Nebraska Supreme Court set forth that

> [t]he initial question in an inverse condemnation case is not whether the actions of the governmental entity were the proximate cause of the plaintiff's damages. Instead, the initial question is whether the governmental entity's actions constituted the taking or damaging of property for public use. That is, it must first be determined whether the taking or damaging was occasioned by the governmental entity's exercise of its power of eminent domain. Only after it has been established that a compensable taking or damage has occurred should consideration be given to what damages were proximately caused by the taking or damaging for public use.

*Id*. at 489, 827 N.W.2d at 492.

The Nebraska Supreme Court concluded that the plaintiffs failed to establish the threshold element that their property was "'taken or damaged for public use'" by the defendant in the exercise of its power of eminent domain and, therefore,

failed to establish that they were entitled to compensation under the Nebraska Constitution. *Id*. The court found that the flooding, which occurred in the plaintiffs' basement, was not a case where the defendant exercised its right of eminent domain, insofar as the defendant had taken immediate action, there had not been a recurring sewage backup, and it was not foreseeable that the defendant's action would take or damage private property. *Id*.

We find that contrary to both 6224 Fontenelle's and MUD's arguments, *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013), is consistent with inverse condemnation precedent and does not broaden or narrow the requirements set forth pursuant to the Nebraska Constitution. *Henderson v. City of Columbus, supra*, involved a single event in which sewage flooded and which the defendant did not know or could not foresee would result in a taking or damaging of property.

In this case, the alleged taking or damaging is permanent. MUD built a permanent gas regulator station to control the pressure and flow of natural gas to the natural gas distribution system, consisting of aboveground pipes, valves, regulators, and other equipment which allows for the continuous monitoring of gas pressure near the property of 6224 Fontenelle. Thus, *Henderson v. City of Columbus, supra*, is distinguishable from these circumstances.

Nonetheless, we are still left with the question of whether or not the installation of the MUD gas regulator station near the property of 6224 Fontenelle constituted a taking or damaging. 6224 Fontenelle argues that there has been a taking or damaging because the value of its property has been significantly reduced as a result of the construction of the gas regulator station, due to the perception of a safety hazard and the unsightly view. 6224 Fontenelle alleged that it can no longer rent the property, insofar as the current tenant feels that the regulator station is "ugly and unattractive" and presents a safety hazard. On the other hand, MUD contends that there are no safety concerns presented by the gas regulator station and that there had been no incidents or accidents at this gas regulator station or any other.

Other state courts have addressed similar circumstances wherein the taking or damaging was the reduction in market value of a property and found that a diminution in property value alone is not a taking or damaging of the property, but, instead, is a measure of just compensation when such taking or damaging is otherwise proved. In the case of *Oliver v. AT&T Wireless Services*, 76 Cal. App. 4th 521, 90 Cal. Rptr. 2d 491 (1999), property owners brought an action against neighbors and a cellular telephone company after the construction of a cellular telephone transmission tower on property adjoining the owners' property; the court held that the mere displeasing appearance in size and shape of the structure otherwise permitted by law, the only admitted effect of which is an alleged diminution in value, cannot give rise to an inverse condemnation claim. See, also, *San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 920 P.2d 669, 55 Cal. Rptr. 2d 724 (1996) (homeowners brought action against public utility, claiming that powerlines on property adjoining theirs ran electric currents which emitted high and unreasonably dangerous levels of radiation onto their property; court held that intangible intrusion must result in direct, substantial, and peculiar burden on property); *M.T.A. v. Continental Develop. Corp.*, 16 Cal. 4th 694, 941 P.2d 809, 66 Cal. Rptr. 2d 630 (1997) (recovery of neighboring landowners in inverse condemnation or nuisance action requires more than showing that value of property has diminished as result of project).

The only evidence 6224 Fontenelle presented in this case was that there was a perception of a safety hazard and that the gas regulator station was unsightly. This is not a direct, substantial, and peculiar burden on the property. We likewise find that a diminution in property value alone is not a taking or damaging of the property, but, instead, is a measure of just compensation when such taking or damaging is otherwise proved. A claimed loss of value in property, in and of itself, cannot establish a taking or damaging for purposes of inverse condemnation, but, instead, is an element of a measure of damages for just compensation when a taking or damaging is

otherwise proved. Thus, while the district court erred in concluding that inverse condemnation required an actual physical taking, it did not err in finding that there were no genuine issues of material fact, dismissing 6224 Fontenelle's motion for summary judgment, and granting MUD's motion for summary judgment.

## CONCLUSION

In conclusion, we find that summary judgment in this case is proper, although for reasons different from those of the district court. We find that contrary to the district court's findings, an actual physical taking or physical damage is not required in order to receive just compensation in an inverse condemnation action. However, we find that a diminution in property value alone is not a taking or damaging of the property, but, instead, is a measure of just compensation when such taking or damaging is otherwise proved. 6224 Fontenelle has failed to show that MUD engaged in a taking or damaging as a matter of law, and there exist no genuine issues of material fact. As such, we affirm the order of the district court dismissing 6224 Fontenelle's motion for summary judgment and granting MUD's motion for summary judgment.

AFFIRMED.

———————————

STATE OF NEBRASKA, APPELLEE, V.
RICHARD R. COBOS, JR., APPELLANT.
___ N.W.2d ___

Filed May 5, 2015.    No. A-14-505.

1.  **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.
2.  **Criminal Law: Evidence: Proof.** In order to justify an alibi instruction, there must be evidence that the defendant was at some other place during the commission of the crime for a length of time that it was impossible for him to have been