Filed 9/8/25  Washeleski v. C.W. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PAWL WASHELESKI,<br><br>    Respondent and Appellant,<br><br>    v.<br><br>C.W.,<br><br>    Petitioner and Respondent. | H052531<br>(Santa Clara County<br>Super. Ct. No. 24CP000293)<br><br>ORDER MODIFYING THE OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 12, 2025, be modified as follows:

1.  On page 16, line 17, the number "2025" is changed to "2024" so the sentence reads:

The order of September 11, 2024 granting a restraining order is affirmed.

There is no change in the judgment.

_____
BROMBERG, J.


_____
DANNER, ACTING P. J.


_____
RODRIGUEZ, J.*


*Washeleski v. C.W.*
H052531

* Judge of the San Diego Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution

Filed 8/12/25  Washeleski v. C.W. CA6 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PAWL WASHELESKI,<br><br>    Respondent and Appellant,<br><br>v.<br><br>C.W.,<br><br>    Petitioner and Respondent. | H052531<br>(Santa Clara County<br>Super. Ct. No. 24CP000293) |

This appeal is from a domestic violence restraining order (DVRO) issued against appellant Pawl Washeleski.  Washeleski challenges the DVRO on numerous grounds, including that the order was not supported by substantial evidence and that there was no evidence of violence or threats.  We have examined each of these challenges.  As explained below, we conclude that there was no reversible error and affirm the DVRO.  We also address the motions and requests filed by Washeleski.

## I. BACKGROUND

Washeleski is an ex-boyfriend of C.W. and the father of their two young children.  (To protect C.W.'s privacy, we refer to her by her initials.  (See Cal. Rules of Court, rule 8.90(b)(1).)  In May 2024, C.W. filed a petition to establish Washeleski's paternity.  The next day C.W. requested a DVRO, and a temporary restraining order was issued.

Four months afterwards, in late August 2024, a three-day bench trial was conducted. On the first day, after a motion to continue from Washeleski was denied, C.W. testified. That day C.W. also presented two other witnesses and submitted a number of exhibits, including a picture and three videos. The testimony from the day was not transcribed, apparently because Washeleski did not learn until then that he needed to hire a court reporter to do so.

On the second day of trial, which was transcribed, Washeleski testified and presented testimony from two other witnesses. On September 4, 2024, the final day of trial, Washeleski presented two more witnesses. The parties then made closing statements, and the trial court granted the DVRO. A hearing on C.W.'s request for attorney's fees was set for September 26, 2024.

In granting the DVRO, the trial court explained that C.W.'s testimony was "more credible" than the testimony presented by Washeleski. The court found "very compelling"—and "alarming"—the testimony and video concerning "bags of what appeared to be animal feces . . . packed up and delivered to [C.W.]." "Domestic violence," the court observed, is very broad and includes "disturbing one's peace," which it found shown by this "incredibly offensive and shocking" evidence. The trial court also noted an incident in which C.W,'s underwear was hung in Washeleski's shop, observing that this action was "designed to humiliate her."

Accordingly, the trial court enjoined Washeleski from contacting C.W. and their two children outside of court-ordered visits. The court also granted C.W. physical custody of the children, but provided Washeleski with two weekly, in-person visits as well as a video call.

On September 11, 2024, the trial court issued a written DVRO as well as a child custody and visitation order. The next day, Washeleski noticed an appeal from the order.

2

## II. DISCUSSION

Washeleski challenges the DVRO against him on multiple grounds, accuses the trial court of bias and misconduct, and objects to the attorney's fees awarded after this appeal was brought. He also has filed a number of motions and requests. Before addressing these matters, we briefly review the principles governing judicial review and, in particular, the presumption of correctness afforded matters on appeal.

### A. The Presumption of Correctness

As the Supreme Court has recognized, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*); see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["[I]t is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "].) In light of this presumption of correctness, appellants bear the burden of providing an adequate record on appeal, and if this burden is not satisfied and the record is inadequate for meaningful review, " 'the decision of the trial court should be affirmed.' " (*Jameson*, *supra*, 5 Cal.5th at p. 609.)

On appeal, parties must support any factual argument with citations to the record. (See Cal. Rules of Court, rule 8.204(a)(1)(C); see also *Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 595 [" ' "Any statement in a brief concerning matters in the appellate record . . . must be supported by a citation to the record." ' "].) Consequently, " ' "if a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived." ' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156.)

In addition, appellants "must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*); see also *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*) ["It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority."].) "Contentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned." (*In re Phoenix H.* (2009) 47 Cal.4th 835, 845; see also *S.C.*, at p. 408 ["When a point is asserted without argument or authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' "].) Moreover, "citing cases without any discussion of their application to the present cases results in forfeiture." (*Allen*, at p. 52.)

We recognize that Washeleski is not an attorney and is representing himself on appeal. However, it is well-settled that the rules governing appellate review apply where a party represents himself or herself on appeal. Parties representing themselves are "to be treated like any other party" and given "no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210; see also *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31 [" 'pro. per. litigants must follow correct rules of procedure' "].)

## B. The Domestic Violence Restraining Order

In challenging the DVRO issued by the trial court, Washeleski contends, among other things, that the DVRO was not supported by substantial evidence, that evidence of violence or threats was required for such an order and that the trial court violated his constitutional rights by issuing an order without such evidence, that he was prevented from presenting exculpatory documents and witnesses, and that the trial court improperly denied a continuance. We address each contention below.

4

### 1. *Substantial Evidence*

Washeleski contends that the DVRO was issued "without substantial evidence." We disagree. To the extent that Washeleski has presented a record of the trial, it shows that the trial court's findings were supported by substantial evidence, and those findings were sufficient for granting the DVRO.

Appellants contending that a finding was not supported by substantial evidence face a " ' "daunting burden." ' " (*Padideh v. Moradi* (2023) 89 Cal.App.5th 418, 438.) Under the substantial evidence standard, appellate courts do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640 (*Caden*).) Instead, "the appellate court's power begins and ends with a determination of whether there is any substantial evidence" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582)—that is, " ' " 'evidence that is reasonable, credible, and of solid value.' " ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1117.) In determining whether there is such evidence, appellate courts review the record "in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the family court's findings." (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1286-1287 (*Schneer*); see *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.) Accordingly, in applying the substantial evidence standard, reviewing courts generally " 'look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing.' " (*City of Bonaventure v. United Water Conservation Dist.* (2022) 79 Cal.App.5th 110, 120 (*City of Bonaventure*).) Finally, in light of the presumption of correctness, reviewing courts start " 'with the presumption that the record contains evidence to sustain every finding of fact,' " and parties challenging sufficiency of the evidence " 'are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark*).)

Based on the testimony of C.W., whom the trial court found more credible than Washeleski's witnesses, the court found that Washeleski's conduct "disturb[ed] the peace" of C.W. (Fam. Code, § 6320, subd. (a).) In particular, based upon video evidence, the court found that Washeleski included "animal feces within Mother's personal items" he delivered to her, which was "incredibly offensive and shocking." The trial court also found that C.W.'s underwear was hung in Washeleski's shop, an incident "designed to humiliate her."

These findings support a restraining order under the Domestic Violence Prevention Act. (Fam. Code, §§ 6200-6460) Under the Act, a court may issue a restraining order upon reasonable proof of "a past act or acts of abuse." (*Id*., § 6300, subd. (a).) "Abuse" is defined for purposes of the Act to include "any behavior that has been or could be enjoined pursuant to Section 6320" (*id*., § 6203, subd. (a)(4)), and that section in turn authorizes orders enjoining one party from, among other things, "disturbing the peace of the other party" (i*d*., § 6320, subd. (a)). Finally, "disturbing the peace" is defined to mean "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (*Id.*, § 6320, subd. (c).) Thus, under the Domestic Violence Prevention Act, a DVRO may be issued to prohibit conduct that disturbs an individual's peace by destroying their mental or emotional calm. The evidence that Washeleski placed animal feces in C.W.'s possessions and her underwear in his shop provided a reasonable, credible, and solid basis for the trial court's conclusion that he caused such a disturbance.

Washeleski does not dispute that C.W. presented evidence that she discovered dog feces among the belongings he sent her, and he acknowledges that she presented pictorial evidence of underwear hanging from the ceiling of his shop. Instead, Washeleski faults the trial court for accepting C.W.'s contentions at face value, despite unspecified "inconsistences and contradictions in her own evidence." He also argues that the trial court should not have inferred that he was responsible for either the feces or the

6

underwear because the former was found four months after he had removed C.W.'s belongings from his home and the latter while he was on a trip to Phoenix. However, as noted above, under the substantial evidence standard, appellate courts do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*Caden*, *supra*, 11 Cal.5th at p. 640.) Instead, appellate courts view the evidence "in the light most favorable to the prevailing party" and "indulge all reasonable inferences in support of the family court's findings." (*Schneer*, *supra*, 242 Cal.App.4th at pp. 1286-1287.) Accordingly, we must accept the trial court's finding that Washeleski was responsible for the feces in the belongings that he sent to C.W. and for the underwear hung in his shop.

We also reject Washeleski's substantial evidence challenge because he has not satisfied his burden of providing an adequate record on appeal. As noted above, because reviewing courts presume that the record contains evidence supporting every finding of fact, appellants challenging sufficiency of the evidence " 'are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*.' " (*Foreman & Clark*, *supra*, 3 Cal.3d at p. 881.) Far from satisfying this requirement, Washeleski's opening brief failed to describe any of the testimony from C.W., whose credibility the trial court expressly noted. Washeleski also failed to satisfy his duty to provide a record adequate for " ' "meaningful review." ' " (*Jameson*, *supra*, 5 Cal.5th at p. 609.) Although C.W. presented her evidence in support of her DVRO request on the first day of trial, Washeleski failed to include in the record a transcript or settled statements concerning the evidence presented that day.

We recognize that Washeleski has represented that on the first day of trial he was unaware that it was necessary to hire a court reporter in order to obtain a transcript. However, there are alternative ways to provide a record where no court reporter is present. For example, where a portion of a proceeding was not transcribed, a party may request a settled statement describing the untranscribed portion. (Cal. Rules of Court,

7

rules 8.130(h)(1), 8.137.)  While Washeleski may have been unaware of these procedures, we cannot ignore the presumption of correctness and relax his burden of proof on appeal because of that lack of awareness.

### 2. *Violence*

In addition to arguing that the DVRO was not supported by substantial evidence, Washeleski contends that the DVRO was improper because of "the complete lack of evidence of violence, threats, or harm."

In fact, there appears to have been some evidence of violence:  In closing, C.W.'s counsel pointed to evidence that Washeleski "caused her bodily injury" when he tried to shake a phone out her hand and when he pushed her against a hallway, and in his reply Washeleski noted a contention that he slammed into C.W. with a forklift and grabbed her arm through a metal roll-up door.

Even more important, despite what the name suggests, domestic violence restraining orders are not limited to parties "attacking," "striking," "sexually assaulting," or "battering" others.  (Fam. Code, § 6320, subd. (a); see also *id*., § 6203, subd. (a)(4) [defining abuse to include conduct that may be enjoined under section 6320]; *id*., § 6300 [authorizing restraining orders against abuse].)  To the contrary, the Domestic Violence Prevention Act expressly authorizes orders restraining parties from "impersonating," "harassing," and—most pertinently here—"disturbing the peace."  (*Id*., § 6320, subd. (a); see also *Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1104-1105 (*Bassi*) [recognizing that DVROs may be issued to enjoin conduct disturbing the peace of others].)  Thus, even if C.W. had not presented evidence of violence, the trial court properly issued a DVRO preventing Washeleski from disturbing the peace of C.W.

### 3. *Equal Protection*

Washeleski argues that the trial court violated the Equal Protection Clause by issuing a DVRO against him "despite no history of violence, threats, or criminal behavior" because such a DVRO "deviates from the legal standard applied to others."  In

8

fact, as shown above, the Domestic Violence Prevention Act expressly authorizes restraining orders for "disturbing the peace." (Fam. Code, § 6320, subd. (a).) Moreover, contrary to Washeleski's assertion, courts routinely issue restraining orders on such grounds. (See, e.g., *Bassi*, *supra*, 101 Cal.App.5th at pp. 1103-1104; *In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 252-254; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602; *Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 398-399.)

### 4. *The Document Subpoena*

Washeleski argues the trial court denied him due process by accepting a falsified proof of service and refusing to enforce a document subpoena that would have enabled him to present exculpatory evidence. This argument fails at both ends: Washeleski has not shown that the trial court refused to enforce a subpoena or that C.W. falsified a proof of service.

Before trial, Washeleski served C.W. with a subpoena requesting texts and e-mails, which C.W. apparently did not produce, and throughout the trial Washeleski asserted need for those documents. However, Washeleski never moved to enforce the subpoena. Indeed, the trial court observed at trial that Washeleski "never provided [the court] with a copy of that subpoena to even consider what had been requested." Washeleski does not contest this statement, much less cite any evidence in the record contradicting it. As a consequence, Washeleski has failed to show any error or abuse of discretion relating to his document subpoena. (See *S.C., supra,* 138 Cal.App.4th at pp. 406-407.)

Washeleski also has failed to show that any proof of service was falsified. Washeleski claims that the proof of service for C.W.'s objections to his document subpoena falsely represented that service occurred via UPS. In support of this accusation, Washeleski points to a letter from the owner of a UPS Store franchise in Campbell. In the letter, the owner states that his store "did not prepare and complete any shipment [to Washeleski's address] using [its] store business UPS Shipping account

9

number." However, the owner goes on to "clarify" that the Campbell store is "not an UPS Corporate representative and has no access to any UPS Corporate specific shipment information beyond the transactions performed under our business UPS account number . . . ." Moreover, Washeleski fails to present any evidence that C.W.'s lawyer purported to mail her objections from the Campbell store rather than another store or through a corporate account. Thus, the letter presented by Washeleski does not show that the proof of service for C.W.'s objections was falsified.

Washeleski also asserts C.W.'s counsel attempted to amend the proof of service, "falsely claiming that service was completed by mail." However, the document that Washeleski cites in support of this assertion is the proof of service for Washeleski's subpoena to C.W., not for C.W.'s objections to that subpoena.

We therefore conclude that Washeleski has failed to show either that the trial court denied enforcement of his document subpoena or that C.W.'s counsel falsified the proof of service on her objections.

### 5. *The Witness Subpoenas*

Washeleski also asserts that C.W.'s counsel prevented key witnesses from testifying by submitting a fraudulent proof of service. However, in support of these assertions, Washeleski cites two subpoenas that he issued, not any proof of service from C.W.'s counsel. Moreover, Washeleski fails to explain how the two witnesses subpoenaed would have testified, much less show how he was prejudiced by their absence. As a consequence, Washeleski has failed to show any reversible error in connection with the witness subpoenas. (See *S.C.*, *supra*, 138 Cal.App.4th at pp. 406-407.)

In his reply brief, Washeleski asserts that a third witness, Gabriel Martinez, was not allowed to testify. However, Washeleski fails to cite any evidence in the record supporting this assertion, and in any event new arguments may not be raised for the first time on reply. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11

10

(*Varjabedian*) ["Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant."].)

### 6. *Continuance*

Finally, Washeleski contends that the trial court erred in denying his request for a continuance on the first day of trial. This denial is recorded by a minute order from the first day of trial. However, because there is no transcript or other such record of the proceedings that day, we do not know either the basis of the request or the grounds for denying it. As a consequence, there is no way of meaningfully reviewing the trial court's denial of the continuance and Washeleski cannot overcome the presumption of correctness. (See *Jameson*, *supra*, 5 Cal.5th at p. 609.)

Consequently, we conclude that there is no procedural or substantive defect in the DVRO issued by the trial court.

## C. Bias and Judicial Misconduct

Washeleski charges that the trial court demonstrated "bias against a self-represented litigant" and "clear favoritism toward opposing counsel." However, he fails to substantiate these charges.

Washeleski contends that the trial court was biased against him because the court refused to enforce a valid subpoena, accepted a fraudulent proof of service, denied a continuance, and imposed excessive attorney's fees on him "as punishment for being self-represented." However, as shown above, Washeleski has failed to show that the trial court denied any request to enforce a subpoena, that there was any fraudulent proof of service, or that the trial court improperly denied his request for a continuance. In addition, while Washeleski repeatedly asserts that attorney's fees imposed on him were excessive and in punishment for being self-represented, he fails to cite any evidence supporting these assertions.

Even more fundamentally, Washeleski cannot show bias by merely pointing to rulings against him. As our Supreme Court has observed, parties have a "due process

11

right to an impartial trial judge" and to "a fair trial in a fair tribunal before a judgment with no actual bias against the defendant or interest in the outcome of the case." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111, overruled on another ground in *People v. Rundle* (2008) 42 Cal.4th 76, 151.) However, "a trial court's numerous rulings against a party— even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review." (*Id*. at p. 1112.) As Washeleski has pointed to only a handful of rulings against him and has failed to show that any of them are erroneous, those rulings fail to demonstrate any bias against him.

Washeleski also contends that there was "collusion" between the trial court and C.W.'s counsel based upon "professional associations within the California Bar." However, the only evidence that Washeleski cites in support of these supposed ties is a page in an unsigned and unsworn "affidavit," which makes no reference to either the trial court judge or the California bar. Moreover, while judges must be mindful of even appearance of bias (Code Civ. Proc., § 170.1, subd. (a)(6)(iii)), "[t]he fact that a judge and an attorney are members of the same professional legal organization . . . does not normally require the judge to either recuse or disclose when the attorney appears before the court." (Rothman et al., California Judicial Conduct Handbook (4th ed. 2017) § 7:32, at p. 433, fn. omitted; see Cal. Judges Assn., Judicial Ethics Update (2003), p. 2.)

### D. Other Objections

Washeleski raises an assortment of other objections to the DVRO. For example, he claims that the trial court based the DVRO "entirely on unverified allegations." He also objects that he was deprived of parental rights, that his children's civil rights were violated, and that both the trial court and C.W.'s counsel violated federal civil rights laws and the California Penal Code. The claim that the trial court relied on unverified allegations is supported only by a citation to several pages of the DVRO that do *not* discuss the evidence supporting the order, and in any event the claim is contradicted by the trial court's explanation of the order, which is based not on unverified allegations, but

on the testimony and exhibits presented during the three-day trial. Washeleski's other arguments are conclusory and unsupported by any meaningful legal analysis and therefore " 'require[] no discussion.' " (*S.C.*, *supra*, 138 Cal.App.4th at p. 408; see also *Allen*, *supra*, 234 Cal.App.4th at p. 52 [citing cases without discussing their application results in forfeiture].) In his reply brief, Washeleski also points to two "judicial notices" that he submitted in the trial court, but there is no indication that these documents were admitted at trial, and in any event, as noted above, new arguments may not be raised for the first time on reply. (*Varjabedian*, *supra*, 20 Cal.3d at p. 295, fn. 11.)

### E. Attorney's Fees

Washeleski also objects that what he represents to be an award of $30,000 in attorney's fees was excessive. However, the trial court did not award attorney's fees in granting the DVRO. Instead, it set a hearing on attorney's fees for September 26, 2024. Washeleski's notice of appeal from the DVRO was filed on September 12, 2024, two weeks before that hearing on the attorney's fees, and there is no indication in the record that Washeleski appealed from the attorney's fees order. As a consequence, we lack jurisdiction to review the attorney's fees award. (See *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 ["A postjudgment order which awards or denies costs or attorney's fees is separately appealable," and where "no appeal is taken from such an order, the appellate court has no jurisdiction to review it"].)

### F. Motions and Requests

In addition to appealing the DVRO, Washeleski has filed over two dozen motions and requests in this court. We already have considered some of these. For example, Washeleski requested disability accommodations, which were granted in part. In addition, several of Washeleski's motions and requests were deferred for consideration with the merits of the appeal. We now consider the deferred matters as well as the other remaining motions and requests.

13

### 1. *Motion to Stay*

Washeleski moved to stay enforcement of unspecified orders concerning custody, visitation restrictions, supervision mandates, and contact limitations; all restraining or protective orders against him; and any monetary judgment and related sanctions. The proper way to seek a stay of enforcement pending appeal is not by motion, but by a petition for a writ of supersedeas. (Cal. Rules of Court, rule 8.112(a).) In addition, a writ of supersedeas may be issued only concerning matters on which an appeal is pending. (*In re Christy L.* (1986) 187 Cal.App.3d 753, 759.) However, to the extent that Washeleski's stay request concerns any matter on appeal, our decision to affirm the order on appeal moots that request. We therefore deny Washeleski's motion for a stay. For the same reasons, we deny Washeleski's emergency motion to compel protection of constitutional rights pending appeal.

### 2. *New Documents*

Washeleski filed a "Notice of Civil Right Violations Not Protected by Judicial Immunity" containing nearly 80 pages of letters, notices, demands, memoranda, affidavits, complaints, and other documents created after issuance of the DVRO as well as a May 2025 declaration with a letter to the Attorney General attached. However, "normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters that were part of the record when the judgment was entered.' " (*Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) As none of the materials filed by Washeleski appears to have been in the record when the DVRO was issued, and Washeleski has not shown any extraordinary ground for considering extra-record material, the record cannot be augmented to include these materials. (*Ibid.*; *In re K.M.* (2015) 242 Cal.App.4th 450, 456.) Therefore, to the extent that Washeleski seeks to augment the record on appeal to include his May 2025 declaration and the documents attached to his notice, his request is denied.

14

Washeleski also has filed a document containing cover sheets from two purported lawsuits as well as a cover letter and a "Unified Civil Rights & Fraud Investigation Packet." The packet contains a number of letters and other documents created in April 2025 as well as documents that appear to be contained in the clerk's transcript. Consequently, these materials are either already in the record, or the record should not be augmented to include them. As a consequence, the request to file this document is also denied.

### 3. *Request for Judicial Notice*

Washeleski requests that we take judicial notice of several documents: an affidavit filed July 18, 2025, "Proof of Service documents" purportedly showing a default, a civil rights and RICO complaint filed in federal court, a letter to the United States Senate Finance Committee, and an "[e]vidence package" concerning constitutional violations, ADA noncompliance, and retaliatory judicial actions. Although the Rules of Court state that any motion seeking judicial notice "must attach to the motion a copy of the matter to be noticed or an explanation why it is not practicable to do so" (Cal. Rules of Court, rule 8.252(a)(3)), Washeleski's request for judicial notice neither attaches copies of the documents in question nor explains why it was impracticable to do so. For that reason alone, the request is denied.

### 4. *The Map of Systemic Failures*

Washeleski has filed two motions for leave to attach to his reply brief a 70-page document entitled "Map of Systemic Failures" as well as a request to submit the document as an accommodation for his disabilities. The map lists 518 "violations," each with a citation to the record and an explanation, usually of just a sentence or two. This proposed attachment is impermissible. Although the Rules of Court permit attachments, they allow as attachments only "copies of exhibits or other materials in the appellate record or copies of relevant local, state or federal regulations or rules, out-of-state statutes, or other similar citable materials." (Cal. Rules of Court, rule 8.204(d).)

15

Washeleski's proposed map contains neither copies of materials in the record nor rules, regulations, statutes, or other similar citable materials. To the contrary, the proposed map contains factual argument that should have been included in Washeleski's briefs and subject to the space limitations on such briefs. It also should be noted that these factual arguments would not help Washeleski on appeal. As previously noted, under the substantial evidence standard, appellate courts focus on whether the trial court's findings are supported by evidence that is reasonable, credible, and of solid value, and contrary evidence is generally disregarded. (*City of Bonaventure*, *supra*, 79 Cal.App.5th at p. 120.) Washeleski's motion to permit attachment of his map of systemic failures is denied.

### 5. *Other Filings and Motions*

Finally, Washeleski has submitted a number of filings concerning alleged misconduct by the trial court, C.W.'s counsel, and the police. None of these matters is on appeal. As a consequence, to the extent that Washeleski requests sanctions or other relief in these filings, those requests are denied.

### III. DISPOSITION

The order of September 11, 2025 granting a restraining order is affirmed.

_____

BROMBERG, J.

WE CONCUR:

_____

DANNER, ACTING P. J.

_____

RODRIGUEZ, J.*

_Watkins v. Washeleski_
H052531

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.